# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO
_____

UNITED STATES OF AMERICA

        Plaintiff,

    vs.                               Case No. 1:18-cr-01576 KWR

JASON REED,

        Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER is before the Court on Defendant's Motion to Withdraw Guilty Plea (**Doc. 60**). The Court held an evidentiary hearing on October 20, 2020. Having reviewed the pleadings, evidence, and testimony at the hearing, the Court finds that Defendant's motion is not well taken and, therefore, is **DENIED.**

## BACKGROUND

Defendant was charged with one count of felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). Defendant was alleged to have been in an apartment that was owned by someone else, and in one of the bedrooms of the apartment were two bags. Defendant is the alleged owner of the bags, and firearms were found in the bags.

Defendant was represented by counsel who has since retired ("former defense counsel"). Prior to Defendant entering into a plea agreement, former defense counsel received discovery from the Government. Former defense counsel sent out an investigator to locate witnesses, but the investigator was unable to find the woman who leased (or owned) the apartment in which the

firearms were found or find any witnesses.  The Government also produced DNA discovery. Defendant's DNA was found on the gun.

Former defense counsel talked with Defendant about his criminal history and what was in his discovery.  Former defense counsel explained the Armed Career Criminal Act and the penalties if ACCA applied.  He recalls there were two judgments for drug conviction, one in state court and one in federal court.  Former defense counsel believed that multiple federal convictions in the same judgment counted as a single conviction on the theory they were all part of the same occasion or transaction.

Former defense counsel discussed with defendant whether he was eligible for ACCA, and he estimated that it did not apply.  This was an estimate and not a promise that he was not eligible for an ACCA enhancement.  Defense counsel stated that Defendant understood that there was a possibility he could be sentenced under ACCA.

On September 17, 2019, Defendant entered into a plea agreement and pled guilty.  **Doc. 41.**  The Court conducted a plea hearing on September 18, 2019, conducted a plea colloquy, and accepted Defendant's guilty plea.  **Doc. 59.**

At the plea hearing, an AUSA advised that Defendant would face a term of imprisonment of up to ten years, "unless the Defendant is determined to be an armed-career criminal in which case he faces up to 15 years – a mandatory of 15 years' imprisonment up to life."  **Doc. 60-1 at 9.** The Court asked whether Defendant understood the maximum penalties, and Defendant said yes. **Doc. 59 at 11**.  Defendant indicated he understood that in the event he got a sentence he did not expect, he would not be able to withdraw his guilty plea.  ***Id.***

At the plea hearing the Court asked whether "anyone made any promises to get you to plead guilty to that that are not contained in the plea agreement or any addendum to the plea agreement?" **Doc. 59 at 15.**  Defendant said no.

Moreover, the written plea agreement provided that the maximum penalty was ten years, "unless defendant is determined to be an armed career criminal, then imprisonment for not less than 15 years up to life."  **Doc. 41 at 2.**  Former defense counsel testified that he did not advise Defendant that this provision would not apply to him.   In the plea agreement, Defendant acknowledged prior convictions in the plea agreement: a 2005 conviction in San Juan County, and federal convictions in 2005 under two separate case numbers (03-cr-1317 and 03-cr-2283).  **Doc. 41 at 8-9.**

The PSR was disclosed on November 25, 2019.  **Doc. 45.**  Defendant was assessed as an armed career criminal.

Defendant was previously convicted in federal court.  An amended judgment was entered on April 20, 2004 in Case No. 03-cr-2283 and Case No. 03-cr-1317, adjudicating defendant guilty on the following counts:

- 21 U.S.C. § 841b(1)(c), distribution of less than 5 grams of a mixture and substance containing Cocaine base (03cr1317).  Date of offense: July 17, 2002.

- 21 U.S.C. § 841(b)(1)(C), distribution of less than 5 grams of a mixture and substance containing cocaine base (03cr1317). Date of offense: July 18, 2002.

- 21 U.S.C. § 841(b)(1)(C), distribution of less than 5 grams of a mixture and substance containing cocaine base (03cr1317) Date of offense: October 14, 2002.

- 18 U.S.C. §§ 922(d)(1), 924(a)(2), disposing of a firearm to a convicted felon (03cr2283). Date of offense: January 29, 2003.

3

**DISCUSSION**

Defendant seeks to withdraw his guilty plea because he asserts it was not knowingly and voluntarily entered.  He argues that he received ineffective assistance of counsel because former defense counsel erroneously estimated that he would not be sentenced under the Armed Career Criminal Act.  The Court finds, based on the testimony and evidence admitted at the hearing, that Defendant was well aware he may be sentenced under ACCA with a fifteen year to life sentence, and counsel was not ineffective.

After a court has accepted the plea but before sentencing, a defendant who wishes to withdraw his plea must "show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). A defendant proceeding under Rule 11(d)(2)(B) does not have an absolute right to withdraw a guilty plea. *See United States v. Rhodes*, 913 F.2d 839, 845 (10th Cir. 1990) ("There is no absolute right to withdraw a guilty plea."). The decision whether to permit withdrawal of a plea "always and ultimately lies within the sound discretion of the district court to determine on a case by case basis . . . ." *United States v. Soto*, 660 F.3d 1264, 1267 (10th Cir. 2011) (quotations omitted).

The Court analyzes seven factors when considering a motion to withdraw a plea:

(1) whether the defendant asserted his innocence,
(2) whether the plea was knowing and voluntary,
(3) whether defendant was assisted by counsel,
(4) whether the defendant delayed filing his motion and, if so, why,
(5) whether withdrawal would prejudice the government,
(6) whether withdrawal would substantially inconvenience the court, and
(7) whether withdrawal would waste judicial resources.

*United States v. Hamilton*, 510 F.3d 1209, 1214 (10th Cir. 2007). Among these factors, the most important to consider are whether the defendant asserted his innocence, the validity of his plea, and the effectiveness of his counsel. *Id.* at 1217. If the defendant cannot meet his burden to prove these factors, then the Court need not address the remaining factors. *Id.* The remaining factors,

4

which focus on the potential burden on the Government and the Court, cannot by themselves "establish a fair and just reason for withdrawal." *Id.*; *see also United States v. Byrum*, 567 F.3d 1255, 1265 (10th Cir. 2009) ("[A] court need not address the prejudice to the government, the timing of the defendant's motion, the inconvenience to the court, or the waste of judicial resources factors, unless the defendant establishes a fair and just reason for withdrawing his guilty plea in the first instance.").

Considering the evidence and the law, the Court finds that Defendant did not meet his burden to show that withdrawing his plea would be fair and just.

## I.   <u>Factor 1: no assertion of innocence.</u>

Defendant did not assert actual innocence in either the briefing or at the evidentiary hearing. To satisfy the assertion of innocence factor, "the defendant must present a *credible* claim of legal innocence." *United States v. Hamilton*, 510 F.3d 1209, 1214–15 (10th Cir. 2007). "In other words, the defendant must make a *factual argument* that supports a legally cognizable defense." *Id.*, *citing United States v. Barker,* 514 F.2d 208, 220 (D.C.Cir.1975) (en banc) ("If the movant's factual contentions, when accepted as true, make out no legally cognizable defense to the charges, he has not effectively denied his culpability...."). Defendant made no claim of legal innocence or asserted a factual argument supporting a legally cognizable defense.

Rather, as explained further below, the record reflects that Defendant entered into a plea because of the discovery he received and the results of defense investigations. The Government produced discovery showing that Defendant's DNA was found on one of the firearms. Moreover, the defense investigator was unable to find witnesses, including the purported renter or owner of the apartment where Defendant was staying when he was arrested or found with the firearms.

II.     **Factors 2 and 3: Defendant's plea was entered knowingly and voluntarily and was not the product of ineffective assistance of counsel.**

Defendant argues that he received ineffective assistance of counsel, because former defense counsel allegedly erroneously estimated that two federal court convictions were one conviction for the purpose of 18 U.S.C. § 924(e), and he did not qualify as an armed career criminal because he did not have the required convictions.

When a defendant's challenge to a guilty plea is based on ineffective assistance of counsel, the Court applies the two-part test established in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Hill v. Lockhart,* 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). To prevail under this test, Defendant "must show *both* (1) that counsel's performance was deficient *and* (2) that this deficiency prejudiced [his] defense." *Carr,* 80 F.3d at 417 (citing *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052).

    A.     **No ineffective assistance under first *Strickland* prong.**

As to the first *Strickland* prong, an alleged erroneous sentencing estimate does not render former defense counsel's performance constitutionally ineffective.  Generally, "[a] miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel." *United States v. Gordon,* 4 F.3d 1567, 1570 (10th Cir.1993); *United States v. McDowell*, 525 F. App'x 841, 845 (10th Cir. 2013).  Former defense counsel credibly testified that he talked with Defendant about ACCA and estimated that Defendant would not be subject to ACCA, but that Defendant understood the possibility that ACCA would apply.  Defendant testified that he understood former defense counsel did not promise that ACCA would not apply to him.  Former defense counsel also testified that he did not promise Defendant that ACCA would not apply.  Moreover, as explained below, the plea

agreement and plea colloquy both provided that Defendant could be subject to ACCA and receive a minimum 15-year to life sentence.  This type of alleged erroneous sentence estimation is not the type of constitutionally deficient performance rising to the level of ineffective assistance of counsel.

Defendant argues that this rule cited in *Gordon* should not apply because his counsel's estimate was off by a great degree. However, an erroneous sentence estimation is not necessarily constitutionally deficient performance even where counsel erroneously states the applicable sentence range or minimum sentence or incorrectly advises a defendant he would not be subject to career offender provisions.  This is especially true when the Defendant has otherwise been made aware of the applicable sentence range.  The record reflects, based on his discussion with former defense counsel, the plea agreement, and plea colloquy, that Defendant clearly knew ACCA might apply and that he faced a potential sentence of fifteen years to life.  *See United States v. Garcia*, 630 F. App'x 755, 758 (10th Cir. 2015) (no constitutionally defective performance where counsel erroneously advised him range was five to forty years instead of ten years to life, given plea colloquy and plea agreement); *United States v. Jordan,* 516 Fed.Appx. 681, 682 (10th Cir. 2013) (applying *Gordon* and holding erroneous sentencing estimate of 135 month maximum sentence was not ineffective assistance when sentence range in fact was ten years to life); *United States v. Silva,* 430 F.3d 1096, 1099 (10th Cir. 2005) (rejecting ineffective assistance claim based on counsel's failure to apprise defendant of sentencing consequences of extensive criminal history and potential career offender status; defendant acknowledged in his plea agreement and during plea colloquy that he understood sentencing would be discretionary); *see also  United States v. Hamilton*, 510 F.3d 1209, 1216 (10th Cir. 2007) ("Mr. Hamilton's allegation that he would have gone to trial but for his attorney's failure to advise him of the career-offender provision is

insufficient to establish prejudice."); *United States v. Norwood*, 487 F. App'x 431, 435 (10th Cir. 2012) (defendant who faced life sentence not given ineffective assistance where he was erroneously told by counsel he faced maximum of ten years and guideline sentence of 70 to 87 months in light of plea agreement and plea colloquy setting out correct maximum sentence); *United States v. Triplett*, 402 F. App'x 344, 348 (10th Cir. 2010) (defense counsel's erroneous statement that defendant faced a maximum 15 years when he in fact faced maximum penalty of life was neither constitutionally deficient nor prejudicial where Defendant was aware of maximum penalty through plea colloquy); *United States v. Cain*, 309 F. App'x 272, 273 (10th Cir. 2009) (Defendant's belief he was subject to ten year maximum instead of 15 year minimum under ACCA was not ineffective assistance or prejudicial in light of plea colloquy); *United States v. Kutilek*, 260 F. App'x 139, 146–47 (10th Cir. 2008) (attorney's incorrect explanation of mandatory minimum, resulting in higher mandatory minimum than defendant thought, did not render his assistance ineffective); *see also United States v. Mannie*, 2012 WL 13059260, at *5 (W.D. Okla. Apr. 2, 2012) (erroneous advice from counsel that he would not be determined an armed career criminal and government would not use his criminal convictions to enhance his sentence vitiated by plea agreement and colloquy).

**B.    No Prejudice under Second *Strickland* Prong.**

As to the second *Strickland* prong, to demonstrate he suffered prejudice as a result of the alleged deficiency Defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill,* 474 U.S. at 59, 106 S.Ct. 366.  Defendant has not shown prejudice, *i.e.*, that he would not have pled guilty absent the alleged erroneous sentence estimate.  Former defense counsel testified that he talked about a potential plea agreement after the (1) defense investigator was unable to find

witnesses to challenge the discovery and (2) discovery indicated that Defendant's DNA was found on the gun.  Defendant reiterated this in his testimony.

Moreover, the record is clear that Defendant knew that ACCA could apply, precluding any finding of prejudice.

In the plea colloquy, the AUSA stated "Defendant faces up to ten years' imprisonment, unless the defendant is determined to be an armed-career criminal in which case he faces up to 15 years, a mandatory term of 15 years' imprisonment up to life."  **Doc. 59 at 9.**  The Court asked Defendant "do you understand the charge and the maximum penalties that go along with it?"  ***Id.* at 10.**  Defendant said yes.  ***Id.***  The Court asked if Defendant understood that the district judge is not mandated to impose the recommended sentence, and that Defendant could receive a sentence higher than the guidelines recommend.  ***Id.***  Defendant said yes.  At the plea colloquy, the magistrate judge asked "in the event you got a sentence that you did not expect, do you understand that you'd not be able to withdraw your guilty plea in that event."  **Doc. 59 at 11.**  Defendant said "yes."  ***Id.***

In the plea agreement, Defendant acknowledged that "there have been no promises from anyone as to what sentence the Court will impose."  **Doc. 41 at 11.**  He also acknowledged that, regardless of the parties' recommendations, "the Defendant's final sentence is solely within the discretion of the Court."  **Doc. 41 at 6.**  At the plea colloquy, Defendant acknowledged that no one made any promises to him not contained in the plea agreement.  **Doc. 59 at 15.** Defendant stated that he had the opportunity to discuss the plea agreement with his counsel and opportunity to fully discuss every section of the plea agreement.  **Doc. 59 at 11.**  The plea agreement and plea colloquy were also clear that the court had final discretion in imposing a sentence, which could be higher than what he expected.

The evidence at the hearing did not contradict these facts. Former defense counsel testified that he and defendant discussed that ACCA could apply, but he estimated that Defendant did not qualify for armed-career offender status. However, he testified that no promises were made, and that Defendant understood that he could be deemed an armed career criminal under ACCA with a fifteen year to life sentence range. Former defense counsel testified that when he reviewed the plea agreement with Defendant, he did not tell Defendant that the fifteen year to life sentence range would not apply. He also testified that he explained the penalties if Defendant were deemed eligible for ACCA enhancement. Both Defense counsel and defendant acknowledged that no promises were made that ACCA would not apply.

Given this record, Defendant's testimony that he would have gone to trial absent former defense counsel's alleged erroneous sentencing estimate is not persuasive and does not establish prejudice. *See Gordon,* 4 F.3d at 1571 ("Given the fact that Defendant pleaded guilty even after being ... informed by the court [that it determined the final calculation of his sentence], his mere allegation that, but for original counsel's failure to inform him about the use of relevant conduct in sentencing, he would have insisted on going to trial, is insufficient to establish prejudice."); *United States v. Hamilton*, 510 F.3d 1209, 1216–17 (10th Cir. 2007) (analyzing similar facts and finding not prejudice in failure to advise on career offender status). Rather, defendant was well aware, based on his conversations with defense counsel, his reading of the plea agreement, and the plea colloquy that he was potentially subject to ACCA with a minimum fifteen-year sentence to life.

### C.    Plea was entered into knowingly and voluntarily.

For the same reason as above, the Court also finds that Defendant's plea was entered into knowingly and voluntarily. He was well aware that ACCA could apply, through (1) former defense counsel's statements, (2) his plea agreement, and the (3) plea colloquy. He also knew that any

sentence estimate given by his defense counsel would not bind the court, and there was no promise by defense counsel regarding what his sentence would be.

Based on this record, the Court finds that Defendant's plea was knowing and voluntary because he knew he possibly faced sentencing under ACCA with a minimum 15-year sentence to life.

### III.   Defendant may not withdraw guilty plea under Fed. R. Crim. P. 11(d)(1).

Defendant argues in a reply brief that he can withdraw his plea for any reason under Fed. R. Crim. P. 11(d)(1).  That provision provides that "[a] defendant may withdraw a plea of guilty or nolo contendere: (1) before the court accepts the plea, for any reason or no reason." Fed. R. Crim. P. 11(d)(1). Defendant argues that the magistrate judge did not accept his plea of guilty.  The Court disagrees.  The magistrate judge accepted his guilty plea, but deferred acceptance of the plea agreement to the district judge.  **Doc. 59 at 16** ("I therefore accept your plea and now adjudge you guilty. I'll defer acceptance of the plea agreement to the district judge.").  The Tenth Circuit appears to have rejected a similar argument, concluding that a plea of guilty was accepted for purpose of Rule 11(d)(1) where the magistrate judge accepted the guilty plea but deferred acceptance of the plea agreement.  *See United States v. Byrum*, 567 F.3d 1255, 1261 (10th Cir. 2009).

Moreover, Defendant waived his right to withdraw his plea of guilty under Fed. R. Crim. P. 11(d)(1) in the plea agreement, as follows: "[b]y signing this plea agreement, the defendant waives the right to withdraw the defendant's plea of guilty pursuant to Federal Rule of Criminal Procedure 11(d) unless (1) the court rejects the plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(5) or (2) the defendant can show a fair and just reason as those terms are used in Rule 11(d)(2)(B) for requesting the withdrawal." **Doc. 41 at 7.**  Defendant has not shown any reason why this waiver should not apply.

**IT IS THEREFORE ORDERED** that the Defendant's Motion Withdraw Guilty Plea (**Doc. 60**) is hereby **DENIED.**

KEA W. RIGGS
UNITED STATES DISTRICT JUDGE