IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JASON REED,

   Petitioner,

v.                                                                               No. 1:23-cv-0910 KWR-KK
                                                                                   1:18-cr-01576 KWR-KK

UNITED STATES OF AMERICA,

   Respondent.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Petitioner Jason Reed's Motion to Vacate Federal Sentence Under 28 U.S.C. § 2255 (CV Docs. 1, 2; CR Docs. 102, 103) (Motion). Reed is incarcerated and proceeding *pro se*. He argues his sentence was improperly enhanced by the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e). The United States responded, (CV Doc. 14), and Reed filed two replies, (CV Docs. 16, 17). Having reviewed the record and applicable law, the Court will dismiss the Motion with prejudice and deny a certificate of appealability.

## BACKGROUND

On September 29, 2017, law enforcement arrested Reed at an apartment rented by a third-party. (CR Doc. 41 at 4). Two bags were found in one of the apartment bedrooms. *Id.* Reed admitted he was the owner of the bags which contained a 1911 Springfield Armory .45 handgun, a .45 caliber round in the chamber with seven rounds of .45 ammunition in the magazine of the gun, and a Glock .40 caliber magazine loaded with eleven .40 caliber rounds. *Id.*

Reed was charged with one count of felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). (CR Doc. 1) (Indictment), (CR Doc. 38) (Information). Reed entered into a plea agreement on September 17, 2019. (CR Doc. 41).

Within the plea agreement, Reed acknowledged, among other provisions, that: (1) the maximum penalty was "imprisonment for a period of up to 10 years; unless defendant [was] determined to be an armed career criminal, then imprisonment for not less than 15 years to life;" (2) "there have been no promises from anyone as to what sentence the Court will impose;" and (3) regardless of the parties' recommendations, his "final sentence is solely within the discretion of the Court." *Id.* at 2, 6, 11.

On September 18, 2019, the Court held a plea hearing, conducted a plea colloquy, and accepted Reed's guilty plea. (CR Doc. 59) (Certified Transcript). At the hearing, upon the Court's direction, the Government advised Reed that he was facing a term of imprisonment of up to ten years, unless he was "determined to be an armed-career criminal in which case he face[d] up to 15 years – a mandatory of 15 years' imprisonment up to life." *Id.* at 9. The Court asked whether Reed understood the maximum penalties, and he answered in the affirmative. *Id.* at 10. Reed also indicated he understood that in the event he got a sentence he did not expect, he would not be able to withdraw his guilty plea. *Id.* at 11. Reed further confirmed that no one had made any promises to him to encourage him to plead guilty, other than those directly contained in the plea agreement. *Id.* at 15.

Subsequent to the plea hearing, the United States Probation Office issued a Presentence Investigation Report (PSR), which assessed Reed as an armed career criminal. (CR Doc. 45 at 7-8, 12, 20, 23). Under ACCA, an individual who violates 18 U.S.C. § 922(g) (felon in possession of a firearm) and who has "three previous convictions . . . for a violent felony or a serious drug offense" must receive a mandatory minimum 15-year sentence. 18 U.S.C. § 924(e). The PSR assessment was made because Reed had at least three prior convictions for a serious drug offense which were deemed to have been committed on occasions different from one another. Those

2

convictions included:

- 21 U.S.C. § 841(b)(1)(c), distribution of less than 5 grams of a mixture and substance containing Cocaine base (03-cr-1317). Date of offense: July 17, 2002.

- 21 U.S.C. § 841(b)(1)(C), distribution of less than 5 grams of a mixture and substance containing cocaine base (03-cr-1317). Date of offense: July 18, 2002.

- 21 U.S.C. § 841(b)(1)(C), distribution of less than 5 grams of a mixture and substance containing cocaine base (03-cr-1317) Date of offense: October 14, 2002.

- 18 U.S.C. §§ 922(d)(1), 924(a)(2), disposing of a firearm to a convicted felon (03-cr-2283). Date of offense: January 29, 2003.

(CR Doc. 45 at 6-7, 43). *See also* 03-CR-01317 JC, Doc. 18 (Indictment). These convictions were acknowledged by Reed in his plea agreement. (CR Doc. 41 at 8-9).

Reed subsequently retained new counsel. On May 14, 2020, Reed moved to withdraw his guilty plea, arguing his former counsel provided ineffective assistance by advising he would not qualify for an ACCA enhancement. (CR Doc. 60). The motion was premised on the contention that Reed's former counsel erroneously assumed his three convictions from *U.S. v. Reed*, No. 03-cr-1317, would qualify as one predicate felony under ACCA because they were in a single federal judgment. *Id.* Due to the fact that his prior counsel was incorrect in his assessment, and an ACCA enhancement could be applied even if the three prior convictions were the result of a single judicial proceeding, Reed argued he did not knowingly and voluntarily enter a plea of guilty. *Id.*

On November 17, 2020, after an evidentiary hearing, the Court denied Reed's motion to withdraw his guilty plea because, based on the testimony and evidence, Reed was aware he might be sentenced under the ACCA with a fifteen year to life sentence, and, therefore, counsel was not ineffective. (CR Doc. 72). Further, the Court determined Reed had not shown prejudice, *i.e.*, that he would not have pled guilty absent the alleged erroneous sentence estimate, because the defense

3

investigator was unable to find any witnesses to challenge the Government's discovery and Reed's DNA was found on the gun. *Id.* at 9.

After resolution of the motion, Reed filed objections to the PSR which assessed him as an armed career criminal. (CR Doc. 76). He argued the Court lacked authority to categorize his prior convictions as serious drug offenses "committed on occasions different from one another" because the inquiry was a question for a jury. *Id.*

Defendant appeared for sentencing on June 14, 2021. At the sentencing hearing, the Court overruled Reed's objections to the PSR and found his three prior predicate convictions for drug distribution under *U.S. v. Reed*, No. 03-cr-1317, were committed on different dates and at different locations and, therefore, subjected him to a career offender enhancement under the ACCA. (CR Doc. 94 at 17-18). The Court imposed a sentence of 180 months incarceration, which was the statutory mandatory minimum. (CR Doc. 84) (Judgment).

Reed filed a direct appeal with the Tenth Circuit asserting three challenges: (1) his guilty plea was unknowing or involuntary because his counsel erroneously advised him that the ACCA enhancement was unlikely to apply; (2) this Court lacked the power to decide whether his prior federal drug-trafficking convictions qualified as ACCA predicate felonies; and (3) he was given insufficient notice that the ACCA enhancement might apply to him. *U.S. v. Reed*, 39 F.4th 1285, 1289 (10th Cir. 2022). The Tenth Circuit rejected each argument. *Id.*

Interpreting the first challenge as an ineffective assistance of counsel claim, the Tenth Circuit determined it failed because Reed could not establish the prejudice requirement under *Strickland v. Washington*, 466 U.S. 668 (1984). Specifically, Reed pleaded guilty after repeatedly being informed he could receive an enhancement, and his DNA on the gun coupled with his defense attorney's inability to find witnesses to corroborate his version of events did not suggest he would

have gone to trial absent his counsel's erroneous advice. As to the second challenge, the Tenth Circuit followed precedent in *U.S. v. Michel*, 446 F.3d 1122 (10th Cir. 2006), which rejected the idea that a jury determines whether prior convictions are committed on occasions different from one another. *Id.* at 1296. The Tenth Circuit acknowledged that *Wooden v. U.S.*, 595 U.S. 360 (2022) was decided by the United States Supreme Court after his sentencing, but it would have had no effect on the outcome of Reed's case as *Wooden* expressly declined to reach the question of whether the Sixth Amendment required a jury to determine if predicate felonies occurred on a single occasion. *See id.* at n.3. Lastly, the Tenth Circuit found his third challenge to be without merit because the plea agreement expressly notified Reed about the potential for an enhancement, the same possibility was discussed at the plea colloquy, the PSR recommended an enhancement, and Reed had an opportunity to raise objections to the PSR which the district court heard and rejected. *Id.* at 1296-97.

The Tenth Circuit issued its mandate on September 12, 2022. (CR Doc. 97). Reed subsequently filed a timely petition for writ of certiorari on October 6, 2022. (CR Doc. 100). The Supreme Court of the United States denied the petition on January 23, 2023. (CR Doc. 101).

On October 17, 2023, Reed, proceeding *pro se*, filed the instant Motion to Vacate with a supplemental brief. (CV Docs. 1, 2; CR Docs. 102, 103). In his Motion, Reed raises four grounds for relief:

> (Claim 1): The Court erred in light of *Wooden v. U.S.* when it found he had committed three predicate offenses on occasions different from one another;
>
> (Claim 2): Reed was not convicted of at least three predicate felonies;
>
> (Claim 3): The occasions clause of the ACCA is unconstitutionally vague; and
>
> (Claim 4): The Court erred in failing to apply the "rule of lenity" in determining whether Reed's predicate felonies were committed on occasions different from one

5

another.

(CV Doc. 1 at 4-8; CR Doc. 102 at 4-8). The United States responded, (CV Doc. 14), and Reed filed two replies, (CV Docs. 16, 17).

## DISCUSSION

A petition under 28 U.S.C. § 2255 attacks the legality of a federal prisoner's detention. *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996). A district court may grant relief under § 2255 if it determines "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255.

Because Petitioner is proceeding *pro se*, the Court will liberally construe his pleadings. *See Haines v. Kerner*, 404 U.S. 519 (1972). This broad reading of a *pro se* litigant's pleadings does not, however, relieve him of the burden of alleging sufficient facts upon which a legal claim may be based. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

### A. Collateral Attack Waiver

The Government requests this Court to summarily deny each of Reed's claims as barred by the collateral attack waiver in his plea agreement. In the section of his plea agreement, titled "Waiver of Appeal" rights, it states in pertinent part:

> The Defendant specifically agrees not to appeal the Court's resolution of any contested sentencing factor in determining the advisory sentencing guideline range. In other words, the Defendant waives the right to appeal both the Defendant's conviction(s) and the right to appeal any sentence imposed in this case except to appeal the Defendant's sentence to the extent, if any, that the Court may depart or vary upward from the advisory sentencing guideline range as determined by the Court. In addition, the Defendant agrees to waive any collateral attack to the Defendant's conviction(s) and any sentence, including any fine, pursuant to 28 U.S.C. §§ 2241 or 2255, or any other extraordinary writ, except on the issue of

defense counsel's ineffective assistance.

(CR Doc. 41 at 10-11).

A petitioner's waiver of the right to collaterally attack his convictions and sentence in a plea agreement is generally enforceable. *United States v. Cockerham*, 237 F.3d 1179, 1181-83 (10th Cir. 2001). When a petitioner waives the right to collaterally attack his or her sentence in a plea agreement but later files a motion pursuant to Section 2255, the Court must determine (1) whether the collateral attack falls within the scope of the waiver; (2) whether the defendant knowingly and voluntarily waived his or her right to collateral review; and (3) whether enforcing the waiver would result in a miscarriage of justice. *United States v. Viera*, 674 F.3d 1214, 1217 (10th Cir. 2012) (citing *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc) (per curiam) (reviewing waiver of appellate rights)); *see also Cockerham*, 237 F.3d at 1183 ("the constraints which apply to a waiver of the right to direct appeal also apply to a waiver of collateral attack rights"). The Court must "strictly construe[ ]" the waiver's scope, and "any ambiguities . . . will be read against the Government and in favor of" the petitioner's right to collateral review. *Id.* (citation omitted).

### 1. Scope of the Waiver

In this case, Reed's claims fall squarely within the scope of the collateral attack waiver. The plea agreement states, "the Defendant agrees to waive any collateral attack to the Defendant's conviction(s) and any sentence, including any fine, pursuant to 28 U.S.C. §§ 2241 or 2255, or any other extraordinary writ, except on the issue of defense counsel's ineffective assistance." (CR Doc. 41 at 10-11). Reed's four claims, brought pursuant to § 2255, are a collateral attack on his conviction and sentence. While Reed briefly mentions ineffective assistance of counsel in his two Replies, he does not bring a claim for ineffective assistance in his Motion to Vacate, nor does he

7

make any such argument in his Brief in Support of his Motion to Vacate.

### 2. Knowing and Voluntary

Reed argues his guilty plea was unknowing and involuntary because his original counsel estimated that three of his prior federal drug convictions would count as one occasion under the ACCA. (CV Doc. 2 at 3). However, this does not show Reed's collateral attack waiver was unknowing or involuntary. To determine whether a waiver of collateral review is knowing and voluntary, the Court looks primarily at two factors: (1) whether the plea agreement itself states that the defendant entered the agreement knowingly and voluntarily, and (2) whether there was an adequate colloquy under Rule 11 of the Federal Rules of Criminal Procedure. *Hahn*, 359 F.3d at 1325.

Here, the plea agreement and plea colloquy demonstrate Reed knowingly and voluntarily waived his right to collateral review. The plea agreement itself expressly stated the nature of the waiver and contained a clear section in which Reed agreed that the plea was made freely and voluntarily. (CR Doc. 41 at 10-11). Within the section titled, "Sentencing," the agreement indicated the maximum penalty provided by law would be "imprisonment for a period of up to 10 years; unless defendant is determined to be an armed career criminal, then imprisonment for not less than 15 years up to life[.]" *Id.* at 2-3. At the end of his plea agreement, Reed represented:

> I have carefully discussed every part of this agreement with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of the relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.

*Id.* at 13. Reed's original attorney represented that he had "carefully discussed every part of this agreement with [his] client," that he had "fully advised [his] client . . . of the relevant Sentencing Guidelines provisions," and that to his knowledge, Reed's "decision to enter into this agreement is

8

an informed and voluntary one." *Id.*

At the change of plea hearing, Reed confirmed under oath that no one forced, threatened, or made any promises to get him to sign the plea agreement and he read the "Waiver of Appeal Rights" section, understood it, and had an opportunity to discuss it with his attorney. (CR Doc. 59 at 3, 13-14). The Court also had the Government recite the minimum and maximum statutory penalties he was facing, and Reed testified he understood what those penalties were. *Id.* at 8-9. The Court made sure Reed understood that the "recommendations" in the plea agreement were not binding and the District Judge, after considering the Sentencing Guidelines, could impose a sentence that was harsher than what Reed or his attorney was expecting or hoping. *See id.* at 12. Reed testified he had enough time with his attorney to discuss his case, he had gone over the evidence against him with his attorney, they talked about possible defenses, and he was satisfied with his attorney's advice and representation. *Id.* at 12-13. Reed then pleaded guilty to the felony charge of being a felon in possession of a firearm. *Id.* at 59. The Magistrate Judge accepted Reed's plea, finding he was "competent and capable of entering an informed plea," he was "aware of the nature of the charge against [him] and the consequences of [his] plea," and his plea was "knowing and voluntary and supported by sufficient facts." *Id.* at 16.

Based on the record, the Court finds Reed knowingly and voluntarily waived his right to collaterally attack his conviction and sentence. Reed's assertion that he pled guilty pursuant to the plea agreement because he did not understand he could be classified as an armed career offender is simply not supported. The potential penalties were clearly listed in the plea agreement and discussed during the plea colloquy. The Tenth Circuit essentially found the same in his direct appeal:

9

> The plea agreement notified Defendant that he faced a 15-year mandatory minimum sentence if the district court determined he was an armed career criminal. Before Defendant pleaded guilty, trial counsel obtained the previous federal court judgment listing Defendant's three previous drug-distribution convictions and discussed the possibility of an ACCA sentence with Defendant. At the plea colloquy, the Government informed Defendant that an ACCA sentence would be imposed if he were found to be an armed career criminal. Finally, the PSR recommended an ACCA sentence be imposed and identified the specific federal drug-trafficking convictions that supported the enhancement. Defendant also had a sufficient opportunity to be heard concerning the ACCA enhancement. He took advantage of this opportunity by filing written objections to the PSR and reraising those objections at his sentencing hearing.

*Reed*, 39 F.4th at 1296-97 (internal citations omitted). *See also United States v. Gordon*, 4 F.3d 1567, 1570 (10th Cir. 1993) ([A] "miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel."). *See e.g.*, *United States v. Blonner*, 2025 WL 817413, at *1 (10th Cir. Mar. 14, 2025) ("[B]oth the written plea agreement and the transcript of the plea hearing indicate that [Petitioner] knowingly and voluntarily waived his right to appeal, and nothing in the record indicates that he did not act knowingly and voluntarily. It would be frivolous to contend he did not knowingly and voluntarily accept the waiver.").

### 3. *Miscarriage of Justice*

"[A] miscarriage of justice through enforcement of a waiver occurs only in one of four situations: '[1] where the district court relied on an impermissible factor such as race, [2] where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, [3] where the sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful.'" *Viera*, 674 F.3d at 1219 (quoting *Hahn*, 359 F.3d at 1327); *see also United States v. Sandoval*, 477 F.3d 1204, 1208 (10th Cir. 2007) ("*Miscarriage of justice* . . . has a narrow meaning" in the context of an appellate waiver.). Thus, Reed bears the burden of establishing that

10

one of these four situations exists. *Sandoval*, 477 F.3d at 1208.

As to Reed's first and second claims, he challenges his categorization as a career offender under § 924(e). Reed argues that because the enhanced ACCA sentence was imposed, it resulted in a sentence above the statutory maximum, which was "a complete miscarriage of justice." (CV Doc. 2 at 14, CR Doc. at 103). In support, he cites to *Wooden v. United States*, 595 U.S. 360 (2022), wherein the United States Supreme Court clarified the meaning of the ACCA "occasions clause" by holding that the word "occasion" means "an episode or event" such that "[o]ffenses committed close in time, in an uninterrupted course of conduct, will often count as part of one occasion." Reed argues this Court erred when it made the determination that he committed three qualifying offenses on "occasions different from one another." He asserts *Wooden* should be applied retroactively to his sentencing. Reed reasons that because this Court did not have the benefit of *Wooden* at the time of his sentencing, he was incorrectly designated as a career offender under ACCA, enhancing his sentence from 10 years to 15 years.

Reed's first and second claims are barred by the collateral attack waiver. As discussed in detail above, Reed agreed during the plea colloquy that he understood he could be sentenced to fifteen years up to life imprisonment if the Court determined him to be an armed career criminal. The same maximum sentence was clearly outlined in his plea agreement, and he had the opportunity to object to the PSR. The sentence imposed by this Court conformed with the terms of his plea agreement and the understanding expressed by Reed at his plea hearing. He has, therefore, failed to show that enforcing the waiver would result in a miscarriage of justice as his sentence does not exceed the statutory maximum. *See United States v. Contreras*, 2017 WL 3701868, at *3 (D.N.M. Aug. 25, 2017), *report and recommendation adopted*, 2017 WL 3724403 (D.N.M. Aug. 28, 2017) ("the 'statutory maximum' . . . is read broadly to include the greatest sentencing range authorized

11

by Congress based on any set of facts or enhancements."). Also, as discussed further below, *U.S. v. Wooden* would not affect the outcome of Reed's sentence.

Reed's third and fourth claims are also barred by the collateral attack waiver. Claim 3 argues the ACCA occasions clause is unconstitutionally vague. Claim 4 asserts the Court should have applied "the rule of lenity" when assessing whether he had committed the predicate offenses on different occasions. Reed unequivocally waived his right to challenge or collaterally attack his sentence, and these arguments are not and cannot be interpreted as ineffective assistance of counsel claims. *See United States v. Chavez-Salais*, 337 F.3d 1170, 1172 (10th Cir. 2003) (determining that collateral attacks include challenges under 28 U.S.C. § 2255, "that complain about the substance of, or proceedings that determined, a defendant's original sentence or conviction").

### B. Impact of Wooden v. U.S.

Even if the Court disregarded the valid collateral attack waiver and considered the substance of Reed's contention that he was erroneously designated as a career offender under the ACCA, it would fail on the merits. Under the ACCA, an individual who violates 18 U.S.C. § 922(g) (felon in possession of a firearm) and who has "three previous convictions . . . for a violent felony or a serious drug offense . . . committed on occasions different from one another" must receive a mandatory minimum 15-year sentence. 18 U.S.C. § 924(e).

On March 7, 2022, after Reed was convicted and sentenced, the Supreme Court decided *United States v. Wooden*, which clarified the meaning of the ACCA's "occasions clause" as "multi-factored in nature" and requiring consideration of "a range of circumstances." *Id.* at 369. *Wooden* highlighted factors such as the offenses' time, location, character, and relationship stating: "In many cases, a single factor – especially of time or place – can decisively differentiate occasions. Courts, for instance, have nearly always treated offenses as occurring on separate occasions if a

person committed them a day or more apart, or at a 'significant distance.'" *Id.* at 70-71 (first quoting *United States v. Rideout*, 3 F.3d 32, 35 (2d Cir. 1993); and then citing *United States v. Riddle*, 47 F.3d 460, 462 (1st Cir. 1995) (per curiam)). But if the crimes "share a common scheme or purpose," they may be "more apt . . . to compose one occasion." *Id*. In *Wooden*, the defendant burglarized ten storage units, in a single location, by the same means, on one night. *Id.* ("The burglaries were part and parcel of the same scheme, actuated by the same motive, and accomplished by the same means."). *Wooden* determined that, while the burglaries resulted in double-digit convictions, they amounted to one occasion under § 924(e). *Id.* Important to its analysis though, the defendant committed the crimes at the same place and time.

Here, the facts are distinguishable from *Wooden*. During Reed's sentencing hearing the Court discussed the three offenses at issue:

> THE COURT: . . . In United States District Court, District of New Mexico, 2003-CR-1317, the defendant admitted to committing distribution of less than five grams of a mixture and substance containing a cocaine base in three different counts, that occurred on three different dates, July 17, 2002; July 18, 2002; and October 14, 2002. Certainly case law does not indicate that the predicate felonies are required to be prosecuted separately or even sentenced separately. The government does have the burden of proving the separateness of the offenses to the Court by a preponderance of the evidence.
>
> *I did follow the Shepard rules in looking at the documents for support of the three separate offenses in this matter*. The Tenth Circuit has adopted a *common sense approach* on what the word "occasion" means when deciding whether these offenses occurred simultaneously or separately. The fact that you argue that they were an ongoing conspiracy or an ongoing flow of events is not something that is supported by case law in considering them as one or three arguments. The case law that the Court relies on indicates that they are three separate offenses that he is being convicted for.
>
> As [the prosecutor] indicated, on behalf of the United States, *not only were they on different dates*, but based on the Presentence Report previously filed, *they occurred in three separate locations – in a local restaurant parking lot; the parking lot of a local park; in a local convenience store*. The defendant, according to the case law, had the choice to cease his criminal conduct at any time between the first and the

13

> second, or the second and the third.
>
> The Court is going to find that each of the counts admitted in United States District Court, District of New Mexico, Case Number 03-CR-1317 were separate-occasion events and were proper in considering each separately as a predicate offense for application of the Armed Career Criminal Act, as shown per the Indictment and the undisputed portions of the Presentence Report that we have talked about, and were properly counted for purposes of determining the application of the Armed Career Criminal Act.

(CR Doc. 94 at 17) (emphasis added).

Included with its response to Reed's Motion to Vacate, the United States submitted a copy of the 2004 PSR created for *U.S. v. Reed*, Case No. 03-cr-1317. (CV Doc. 15-1). The PSR reflected that, on July 17, 2002, Reed sold crack cocaine to a confidential informant at a local restaurant. *Id.* at 5. The following day, on July 18, 2002, Reed met with a confidential informant at a park where he exchanged crack cocaine for clothing valued at $162.81. *Id.* Approximately three months later, on October 14, 2002, Reed sent his brother to a convenience store to meet with a confidential information to exchange crack cocaine for $500. *Id.* Reed was subsequently convicted and sentenced for each of the three incidents under the same federal case. *Id.*

The holding from *Wooden* would not have changed this Court's conclusion that Reed committed three separate offenses on occasions different from one another. At Reed's sentencing, the Court indicated it followed *Shepard v. United States*, 544 U.S. 13 (2005), which directed sentencing courts to rely on court records associated with prior convictions, such as the plea agreement and transcript of the plea colloquy, to review the time, place, and substance of the convictions for the purpose of determining whether they were committed on occasions different from one another. *Wooden* is consistent with *Shepard* in that they both highlighted factors such as the offenses' time, location, character, and relationship. Reed admitted to distributing cocaine base at three different locations on three separate dates. While two of the incidences occurred one

14

day after the other, unlike the defendant in *Wooden*, Reed had time in between the crimes to evaluate his decisions such that he did not engage "in an uninterrupted course of conduct." *See Wooden*, 595 U.S. at 369. *See e.g.*, *United States v. Daniels*, 2022 WL 1135102, at *1 (4th Cir. Apr. 18, 2022) ("Daniels committed his three prior offenses days apart - April 15, April 20, and May 8. Thus, we have no reason to doubt that they occurred on three separate occasions" in light of *Wooden*); *Morris v. Williams*, 2022 WL 866140, at *2 (S.D. Ill. Mar. 23, 2022) ("Morris's drug offenses took place four days apart, making them separate occasions under Wooden."); *United States v. Thompson*, 2023 WL 4459604, at *4 (M.D.N.C. July 11, 2023) (Thompson committed burglaries on March 16 at 2:45 a.m., March 16 at 3:00 a.m. at a different location, and another on March 19, all three of which were found to be committed on different occasions).

Thus, even if Reed's claims were not barred by the collateral attack waiver in his plea agreement, his four claims, all essentially premised on the Supreme Court's decision in *Wooden*, would fail on the merits. *See* (CV Doc. 1 at 9) (Reed argues "Issue Numbers 2, 3 & 4 were not previously raised [in his direct appeal] as they only became cognizable after" *Wooden*).

Lastly, the Court notes that subsequent to *Wooden*, the Supreme Court decided *Erlinger v. United States*, 602 U.S. 821 (2024), which held that only a jury may determine whether a defendant's prior criminal acts were committed on different occasions. However, this does not aid Reed in the instant action because *Erlinger* set forth a new rule of criminal procedure, which would not apply retroactively on collateral review. *See Erlinger*, 602 U.S. at 859 (Kavanaugh dissenting) ("For any case that is already final, the *Teague* rule will presumably bar the defendant from raising today's new rule in collateral proceedings.") (citing *Edwards v. Vannoy*, 593 U.S. 255, 258 (2021); *Teague v. Lane*, 489 U.S. 288, 310 (1989) (plurality opinion)). The district courts which have addressed this issue agree that *Erlinger* does not apply retroactively. *See e.g.*, *United*

15

*States v. Gallimore*, 2024 WL 4593877, at *2, n.3 (W.D. Okla. Oct. 28, 2024) (*Erlinger* is "a rule of criminal procedure that does not apply retroactively on collateral review."); *Massengill v. United States*, 2024 WL 3975885, at *9 (W.D. Tenn. Aug. 28, 2024) ("Nothing in *Erlinger* suggested that its ruling applied retroactively to cases on collateral review."); *Grant v. United States*, 2024 WL 4729193, at *3 (M.D. Fla. Nov. 8, 2024) ("*Erlinger*'s new requirement that only a jury can consider the ACCA's occasions inquiry is not a substantive rule because it only alters the manner of determining the defendant's culpability. Such a procedural rule does not apply retroactively on federal collateral review.") (internal quotations omitted); *United States v. Knutson*, 2025 WL 1125474, at *2 (D. Minn. Apr. 16, 2025) (same); *United States v. Andrews*, 2025 WL 1065601, at *4 (D. Minn. Apr. 9, 2025) (same).   Reed has cited no case — and the Court has found none — holding that any right first recognized in *Erlinger* is retroactively applicable on collateral review.

### C. A Certificate of Appealability Will Be Denied

Habeas Corpus Rule 11 provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."   A certificate of appealability requires "a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2). The "petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."   *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).   For the reasons explained above, the Court finds that reasonable jurists could not debate the denial of Reed's § 2255 motion and, therefore, a certificate of appealability will be denied.

16

**IT IS ORDERED** that Petitioner Jason Reed's Motion to Vacate Federal Sentence Under 28 U.S.C. § 2255 (CV Doc. 1; CR Doc. 102) is **DISMISSED with prejudice**; a certificate of appealability is **DENIED**; and a separate judgment will be entered closing the civil case.

                                                 /S/
                                            KEA W. RIGGS
                                            UNITED STATES DISTRICT JUDGE